UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

Jonathan H. Dodge,

      Petitioner,

      v.                                  Civil Action No. 1:13-cv-222

State of New Hampshire;
Andrew Pallito, Commissioner,
Vermont Department of Corrections,

      Respondents.

## REPORT AND RECOMMENDATION
(Docs. 1, 3, 4, 7, 10)

Petitioner Jonathan H. Dodge, proceeding *pro se*, has filed a Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. (Doc. 1.) He has simultaneously filed a handwritten "Petition for Amended Writ of Habeas Corpus," (Doc. 1-7), and a "Memorandum of Law," (Doc. 1-1). Asserting that he is fighting extradition to New Hampshire, Dodge seeks release from custody in Vermont and an order that the New Hampshire criminal charges against him be dropped. (Doc. 1-1 at 2, 5). He argues that his conduct was not punishable under N.H. Rev. Stat. Ann. 638:4 and that his trial in New Hampshire was marred by perjured testimony, false evidence, and prosecutorial misconduct. (Doc. 1 at 5, 8, 9.) He also asserts that he will be murdered if he is returned to New Hampshire because he filed a complaint with the FBI against New Hampshire officials who were involved in his criminal case. (Doc. 1 at 3; Doc. 1-7 at 2.)

Currently pending are Respondent State of New Hampshire's Motion to Dismiss or Transfer (Doc. 3), Respondent Andrew Pallito's Motion to Dismiss (Doc. 4),[1] Dodge's "Motion for Bail" (Doc. 7), and Dodge's "Emergency [Motion for] Order to Stay Governor Warrant" (Doc. 10). For the reasons set forth below, I recommend that the Court GRANT both Motions to Dismiss (Docs. 3, 4), DENY AS MOOT Dodge's Motion for Bail (Doc. 7) and his Emergency Motion to Stay the Governor's Warrant (Doc. 10), and DENY Dodge's Petition (Doc. 1). Denial of the Petition should be with prejudice on the four issues set forth in *Michigan v. Doran*, 439 U.S. 282, 289 (1978), but should not impact Dodge's ability to attack the New Hampshire criminal proceedings in an appropriate forum based on the alleged defects in those proceedings.

## Factual Background

The essential allegations in the documents that Dodge has filed are as follows. On May 27, 2010, after a jury trial, Dodge was convicted in Hillsborough County (New Hampshire) Superior Court for issuing a bad check in violation of N.H. Rev. Stat. Ann. 638:4. (Doc. 1 at 1.) The check at issue was payable to Jonathan H. Dodge in the amount of $749.78, was dated March 29, 2008, and was purportedly signed by Michael Eaton on an account belonging to Ellison Construction Inc. of Beverly, Ohio. (*See* Doc. 1-3.) Prior to sentencing, Dodge filed a petition for writ of mandamus with the New Hampshire Supreme Court. (*See* Doc. 3-1.) In a ruling dated October 21, 2010 the Supreme Court granted Dodge's motion to amend the petition, but denied the petition and

---

[1] Dodge does not list Andrew Pallito in the caption of either his Petition (Doc. 1) or his Petition for Amended Writ of Habeas Corpus (Doc. 1-7), but does include Andrew Pallito in the caption of his Memorandum of Law (Doc. 1-1).

reminded him that he could appeal the substance of his conviction within 30 days of sentencing.  (*Id.*)[2]

Dodge sought to continue his sentencing hearing, and the prosecution filed a written opposition dated November 17, 2010.  (*See* Doc. 1-4.)  Dodge asserted a variety of arguments for postponing the sentencing.  He argued that he should not be sentenced until his motion to set aside the jury verdict was heard.  (Doc. 1-5 at 1, ¶ 9.)[3]  He also argued that there had been multiple perjuries at his trial (Doc. 1-4 at 1), and noted that he had filed a complaint with the Federal Bureau of Investigation against, among others, the prosecutor and the trial judge.  (*See* Doc. 1 at 3; Doc. 1-4 at 1.)  According to Dodge, his complaint to the FBI made the trial judge "flaming mad," and Dodge believed that he would be murdered if he stayed in New Hampshire.  (*See* Doc. 1 at 3.)[4]  Although it is not particularly clear from the Petition, it appears that, prior to sentencing, Dodge left New Hampshire and came to Vermont, where he says he is now "fighting extradition to New Hampshire on this phony charge."  (*See* Doc. 1-1 at 2, ¶ 19.)

---

[2] Dodge asserts that the Supreme Court's grant of his motion to amend the petition means that he *prevailed* in the Supreme Court.  According to Dodge, the Hillsborough County Superior Court subsequently failed to comply with the Supreme Court's order, and the Supreme Court has refused to force the lower court to comply.  (*E.g.*, Doc. 1-1 at 2.)  Those assertions are incorrect—the Supreme Court's mandate was "Petition denied"; Dodge prevailed only on his motion to *amend* the petition, but the petition itself was denied.  (Doc. 3-1.)

[3] Dodge maintained that the jury verdict should be set aside because his conduct was not punishable under N.H. Rev. Stat. Ann. 638:4.  According to Dodge, *he* was the victim of Michael Eaton's bad check, and thus his case fit the exception under § 638:4(I) for situations "where the drawee refuses payment for any other reason through no fault of the person who issued or passed the check."  (*See* Doc. 1-5 at 1, ¶ 11.)  He continues to press that argument in his case before this Court.  (*E.g.*, Doc. 1 at 5; Doc. 1-1 at 1, ¶ 2.)

[4] According to Dodge, the New Hampshire officials involved in his criminal trial are members of the New Hampshire state mafia, and, if he loses this case, he "will without a doubt be murdered" by them for turning them in to the FBI.  (Doc. 1-7 at 2.)

The following additional facts are material to the various pending Motions. Dodge was in custody in Vermont when he filed his Petition on August 12, 2013. Dodge himself asserts so. (*See* Doc. 5 at 8, ¶ 1.) Records from proceedings in the Vermont Superior Court, Lamoille Criminal Division indicate that Dodge was arraigned on a fugitive petition on June 3, 2013; that he refused to waive extradition; and that the court entered a bail order and a mittimus to the Northeast State Correctional Facility (NSCF) in St. Johnsbury. (Doc. 4-3 at 1.) Dodge remained incarcerated at NSCF through August 28, 2013. (*See id.* at 2.)

On July 16, 2013—while incarcerated at NSCF—Dodge filed a petition for a writ of habeas corpus with the Vermont Superior Court, Caledonia Civil Division. (*See* Doc. 4-4 at 1.) As of September 25, 2013, that state habeas petition was still pending, (*id.* at 2.), and there is no indication that the Caledonia Civil Division has taken any action on the petition since that date.

On August 28, 2013, the Lamoille Criminal Division ordered that Dodge was "to be released at 4pm tomorrow unless governor's warrant is served." (Doc. 4-3 at 2.) Dodge was apparently released on August 29, 2013. (*See* Doc. 4 at 3.) Vermont Governor Peter Shumlin issued a Governor's Warrant for Dodge's arrest on August 30, 2013. (Doc. 8-3 at 1.) Dodge was arrested on that warrant on October 18, 2013. (Doc. 8-2.) Pursuant to 13 V.S.A. § 4950, Dodge was then brought before the Vermont Superior Court, Orleans Criminal Division. (*See* Doc. 8-4.) The Orleans Criminal Division ordered Dodge held without bail, and later ordered that Dodge's removal from Vermont be stayed pending this Court's decision on his Petition.

4

(*See* Docs. 8-1, 8-4.)  On October 29, 2013, the State of Vermont dismissed the fugitive petition action against Dodge in the Lamoille Criminal Division.  (Doc. 8-1.)

## Analysis

### I. Nature of Dodge's Petition

I begin by noting that Dodge's Petition cannot be a petition for relief under 28 U.S.C. § 2254 because he is not "in custody pursuant to the judgment of a State court." 28 U.S.C. § 2254(a).  He is not presently in custody pursuant to any judgment of the New Hampshire courts on the conviction for issuing a bad check.  Instead, Dodge is being held in connection with extradition proceedings.  His Petition is therefore more properly considered a petition pursuant to 28 U.S.C. § 2241(c)(3).  *See Sacirbey v. Guccione*, 589 F.3d 52, 62 (2d Cir. 2009) (basis for habeas petition was that, by means of extradition proceedings against the petitioner, he was placed "in custody in violation of the Constitution or laws of treaties of the United States") (quoting 28 U.S.C. § 2241(c)(3)).

### II. Custody

A petitioner under § 2241(c)(3) must be "in custody."  The State of New Hampshire seeks dismissal on the grounds that Dodge is no longer in custody.  (Doc. 3 at 1.)  Here, at the time that the State of New Hampshire filed its Motion to Dismiss on September 11, 2013, Dodge was not in custody; he had been released pursuant to the order of the Lamoille Criminal Division, and was not in custody again until his arrest on October 18, 2013.

However, the fact that Dodge might have been released for several weeks before being arrested on the Governor's Warrant does not defeat this Court's jurisdiction.

Section 2241(c)(3)'s custody requirement—like the custody requirement in the other habeas statutes—is evaluated at the time a petition is filed.  *See Reyes-Sanchez v. Ashcroft*, 261 F. Supp. 2d 276, 282–83 (S.D.N.Y. 2003); *see also Spencer v. Kemna*, 523 U.S. 1, 7 (1998) ("[Petitioner] was incarcerated by reason of the parole revocation at the time the petition was filed, which is all the 'in custody' provision of 28 U.S.C. § 2254 requires."); *Perez v. Greiner*, 296 F.3d 123, 125 n.3 (2d Cir. 2002) ("Since petitioner was incarcerated in New York when he filed his petition . . . he fulfills the 'in custody' requirement of 28 U.S.C. § 2254.").  Here, at the time Dodge filed his Petition, he was in custody in Vermont (on a fugitive petition) and was seeking habeas corpus in extradition proceedings.  To the extent that Dodge's present custody status is relevant, he is again in custody in Vermont (now on a Governor's Warrant) and is still seeking habeas corpus relief.  In either case, this Court has jurisdiction.

**III.   Exhaustion of State Remedies**

Respondent Andrew Pallito asserts that Dodge's Petition should be dismissed because Dodge has failed to exhaust his state remedies.  (Doc. 4 at 1.)  Specifically, Commissioner Pallito contends that, in light of Dodge's pending habeas petition before the Vermont Superior Court, Caledonia Civil Division, his Petition in this Court should be dismissed for failure to exhaust.  (*Id.* at 5.)  Section 2241 does not by its own terms require the exhaustion of state remedies as a prerequisite to the grant of federal habeas relief.  *United States ex rel. Scranton v. State of New York*, 532 F.2d 292, 294 (2d Cir. 1976).  However, "decisional law has superimposed such a requirement in order to accommodate principles of federalism."  *Id.*

In Vermont, a petition for a writ of habeas corpus in state court is an appropriate method for individuals to challenge the legality of their detention in a fugitive petition case brought pursuant to 13 V.S.A. § 4955.  *Lovejoy v. State*, 148 Vt. 239, 243, 531 A.2d 921, 924 (1987).  The same is true for individuals arrested upon a Governor's Warrant.  13 V.S.A. § 4950; *Lovejoy*, 148 Vt. at 243, 531 A.2d at 923–24.  Here, it does not appear that Dodge has filed a state habeas petition challenging his detention under the Governor's Warrant.  While he was in custody pursuant to the Lamoille Criminal Division's order in the fugitive petition case, he did file a habeas petition with the Caledonia Civil Division.  That state habeas petition is apparently still pending notwithstanding the fact that Dodge has been arrested on a Governor's Warrant and the action in the Lamoille Criminal Division has been dismissed.[5]  Thus it would appear that Dodge has not exhausted his state court remedies.

Despite the lack of exhaustion, it seems prudent in this case to address the merits of the claims that are cognizable in this Court.[6]  Unlike 28 U.S.C. § 2254(b)(2), the language of § 2241 does not expressly authorize a federal court to deny an unexhausted

---

[5] The precise nature of Dodge's state habeas petition is not clear from the record.  Commissioner Pallito argues that Dodge's state habeas petition "involves an allegation of illegal search and seizure by Vermont authorities and is unrelated to his extradition to New Hampshire." (Doc. 8 at 7 n.5.)  However, it is unclear whether Dodge's allegation of a "false arrest" on November 6, 2008 (Doc. 7 at 1, ¶ 2) is a Fourth Amendment claim unrelated to his other claims, or whether instead he believes his arrest was "false" because of his claim that the exception in N.H. Rev. Stat. Ann. § 638:4(I) applied.  Regardless, it does not appear that the issues Dodge raises in his Petition have been litigated to conclusion in the Vermont state courts.

[6] Although there are few details before this Court about the proceedings in the Caledonia Civil Division, it is worth noting that the Orleans Criminal Division—proceeding pursuant to 13 V.S.A. § 4950—has stayed Dodge's removal from Vermont pending this Court's decision.  Thus the concerns of comity underlying the exhaustion requirement for federal habeas relief are lessened in this case.  *See Daye v. Attorney Gen. of State of New York*, 696 F.2d 186, 191 (2d Cir. 1982) ("The exhaustion requirement springs primarily from considerations of comity.").

§ 2241 petition. However, for the reasons discussed below, it is inappropriate for this Court to resolve most of Dodge's claims, and the claims that are cognizable by the Court are "plainly meritless." *Rhines v. Weber*, 544 U.S. 269, 270 (2005). Under these circumstances, it is sensible to follow the policy of § 2254(b)(2). *See Montez v. McKinna*, 208 F.3d 862, 866 (10th Cir. 2000) (reasoning that, where habeas petition raised no credible federal constitutional claim, it was not inconsistent with § 2241 or with habeas corpus precedent to follow the policy of § 2254(b)(2)).

## IV. Merits

The State of New Hampshire and Commissioner Pallito both seek dismissal on the merits, arguing that any challenge based on asserted defects in the New Hampshire criminal proceedings must be pursued in New Hampshire. (*See* Doc. 3 at 2; Doc. 4 at 1.) Respondents are correct on that point. Now that the Governor of Vermont has granted the Governor of New Hampshire's demand for extradition, this Court is limited to deciding: "(a) whether the extradition documents on their face are in order; (b) whether the petitioner has been charged with a crime in the demanding state; (c) whether the petitioner is the person named in the request for extradition; and (d) whether the petitioner is a fugitive." *Strachan v. Colon*, 941 F.2d 128, 130 (2d Cir. 1991) (quoting *Michigan v. Doran*, 439 U.S. 282, 289 (1978)). On those narrow issues, there are no disputes.

The extradition documents are on their face in order. Although he contests the legality of his arrest and conviction, Dodge does not dispute that he was charged with a crime in New Hampshire. Moreover, although Dodge has apparently used several aliases

(including "Brian Smith"), there is no dispute that he is the individual named in New Hampshire's Extradition Application as well as the Vermont Governor's Warrant. (*See* Doc. 8-3 at 1, 5.) Finally, Dodge is a "fugitive" because he was charged with a crime under New Hampshire law, he left New Hampshire before the criminal proceedings had concluded, and he is now in Vermont. *Strachan*, 941 F.2d at 130.

In addition to his allegations of defects in the New Hampshire criminal proceedings, Dodge asserts that if he is returned there, the New Hampshire officials that were involved in his criminal prosecution will murder him for filing a complaint against them with the FBI. Generally, "[o]ur federal system presupposes confidence that a demanding State will not exploit the action of an asylum State by indulging in outlawed conduct to a returned fugitive from justice." *Sweeney v. Woodall*, 344 U.S. 86, 91 (1952) (Frankfurter, J., concurring). If there are extraordinary cases where that confidence might be undermined, this is not one of them. Even the petitioner in *Sweeney*, who alleged that he had been "brutally mistreated" while confined in Alabama before escaping to Ohio, was required to return to Alabama to raise his constitutional challenges. *Id.* at 90 (per curiam). Here, Dodge alleges that the New Hampshire judge was mad about Dodge's complaint to the FBI, but has offered only his own speculation that the state officials involved in his criminal trial are members of the mafia and will kill him in retaliation. That is insufficient to justify this Court's intervention in Dodge's prompt return to the demanding state.

Having reached these conclusions, there is no need to transfer this § 2241 case to the District of New Hampshire. This Court can expeditiously complete its duties as the

federal court in the asylum state, leaving all other issues for adjudication in the Caledonia Civil Division (to the extent that cognizable issues remain in that proceeding) or in New Hampshire.  The above conclusions also obviate Dodge's Motion for Bail (Doc. 7) and his Emergency Motion to Stay the Governor's Warrant (Doc. 10).

## **CONCLUSION**

For the reasons set forth above, I recommend that the Court GRANT both Motions to Dismiss (Docs. 3, 4), DENY AS MOOT Dodge's Motion for Bail (Doc. 7) and his Emergency Motion to Stay the Governor's Warrant (Doc. 10), and DENY Dodge's Petition (Doc. 1).  Denial of the Petition should be with prejudice on the four issues set forth in *Michigan v. Doran*, 439 U.S. 282, 289 (1978), but should not impact Dodge's ability to attack the New Hampshire criminal proceedings in an appropriate forum based on the alleged defects in those proceedings.

Dated at Burlington, in the District of Vermont, this 6th day of December, 2013.

/s/ John M. Conroy       
John M. Conroy
United States Magistrate Judge

Any party may object to this Report and Recommendation within fourteen days after service thereof, by filing with the Clerk of the Court and serving on the Magistrate Judge and all parties, written objections which shall specifically identify those portions of the Report and Recommendation to which objection is made and the basis for such objections.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b)(2); L.R. 72(c).  Failure to timely file such objections "operates as a waiver of any further judicial review of the magistrate's decision."  *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989).